**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LESLIE URLAUB and MARK PELLIGRINI, and MARK FERRY,** on behalf of themselves and all others similarly situated, )))) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **Case No. 21 C 4133** |
| **CITGO PETROLEUM CORPORATION, et al.,** )))) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Leslie Urlaub, Mark Pellegrini, and Mark Ferry have brought this suit on behalf of

a class of similarly situated persons against their former employer, two defined benefit

plans sponsored by the employer, and the fiduciary of the plans. They allege that the

defendants have violated several provisions of the Employee Retirement Income

Security Act of 1974 (ERISA) by using out-of-date mortality assumptions to calculate

their benefits under the plans. Before the Court is the plaintiffs' motion for class

certification. For the reasons discussed below, the Court provisionally grants the

plaintiffs' motion subject to the amendment of the class definition as discussed in this

order.

**Background**

For purposes of this opinion, the Court assumes familiarity with its order on the

defendants' motion for summary judgment, *see* May 6, 2024 Summ. J. Order, dkt. no. 130, which discusses the relevant background. The Court incorporates that background here and thus proceeds directly to the issues presented by the class certification motion.

The plaintiffs seek to certify the following class:

> All of the Plans' participants and their beneficiaries with a Benefit Commencement Date on or after January 1, 1995 and prior to January 1, 2018, and who are receiving a Joint and Survivor Annuity (or, for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity), that is less valuable than it would be if the participant's single life annuity were converted to a joint and survivor annuity or pre-retirement survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) with an annual stability and September lookback period.

Pls.' Mot. for Class Cert. at 4. They assert that there are 1,773 individuals in this class and that the total underpayment for all class members is at least $31,713,141.

## Discussion

As an initial matter, the Court addresses the impact of its ruling on the defendants' motion for summary judgment on one aspect of the class certification motion. In that ruling, the Court concluded that Pellegrini's claim for breach of fiduciary duty was untimely because ERISA's six-year statute of repose for such claims was triggered, in this case, when the defendants issued the participant's first JSA benefits check. *See* May 6, 2024 Summ J. Order, dkt. no. 130. The reasoning behind this ruling means that putative class members who, like Pellegrini, were issued checks more than six years before the date this suit was filed would also be time-barred from bringing claims for breach of fiduciary duty. As a result, the most appropriate course of action would be to create a subclass of class members who were issued checks on or after

August 3, 2015, with Urlaub and Ferry (but not Pellegrini) as the representatives of the subclass.  The Court will proceed with its class certification analysis with this approach in mind.  *See Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 611 (N.D. Ill. 2009) ("A district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate.").

For a case to proceed as a class action, the plaintiffs must show that their proposed class satisfies the requirements of Federal Rule of Civil Procedure 23.  First, a putative class must satisfy four requirements under Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)–(4).  Second, the putative class must fall within one of the three categories in Rule 23(b).

## A.      Rule 23(a) requirements

### 1.      Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Although the Seventh Circuit has emphasized that there are "no immovable benchmarks for meeting Rule 23(a)'s numerosity requirement," it has "recognized that 'a forty member class is often regarded as sufficient to meet the numerosity requirement.'"  *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777–778 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020)).  The plaintiffs' proposed class has 1,773 members.  This is sufficient to satisfy the Rule.  *See id.* (explaining that a class satisfies Rule 23(a)(1) when it "involve[s] such large numbers of potential members that volume alone will make joinder impracticable").

The defendants do not contest that a class of 1,773 satisfies the numerosity

requirement.  Rather, they argue that the class in reality is far smaller because a large number of putative class members claims are "facially time-barred."  Defs.' Resp. at 7. They argue that "only 30 individuals who retired between August 3, 2017 and December 31, 2017 (none of whom are named plaintiffs) would have timely claims based on the four-year statute of limitations for [the claims under 29 U.S.C. §§ 1053, 1054, and 1055] and a three-year period for [the claim for breach of fiduciary duty under 29 U.S.C. § 1104]."  Defs.' Resp. at 7.  The defendants further argue that "[e]ven if the Court applied a six-year statute of limitations" for the fiduciary-duty claim, "the class would contain only . . . 258 members."  *Id.*

The defendants' argument might have more weight if the Court had decided, on summary judgment, that the defendants' preferred limitations periods and/or accrual dates applied.  The result of such a ruling would mean that the class would need to be redefined to exclude putative class members with untimely claims, which then might reduce the class count.  But, as the Court explained in its summary judgment order, the defendants' statute of limitations defense involves a genuine dispute of material fact that must be resolved at trial.  Thus, as it stands, the defendants are putting the cart before the horse by arguing that the class is not sufficiently numerous.  The fact that the defendants ultimately may have a successful statute-of-limitations defense against many class members does not mean that those individuals cannot be counted at the certification stage.  Otherwise, no case in which a defendant had a colorable statute-of-limitations argument would be suitable for class treatment.

### 2.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  A

common question is one "that is 'capable of classwide resolutions—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The commonality requirement, however, does not mandate that "every member of the class have an identical claim." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). "It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Id.*

The plaintiffs allege that the defendants engaged in a single course of conduct: calculation of class members' JSA benefits using an eight percent interest rate and the 1971 Mortality Table. And the plaintiffs allege that this conduct affected all class members in the same way: it decreased the value of their JSAs as compared to an SLA. The Court agrees that the commonality requirement is satisfied, because "all of Plaintiffs' ERISA claims in this case relate to the same central issue: whether the actuarial assumptions employed by CITGO in calculating JSAs systematically penalize married Class members when compared to their single counterparts and thus violate ERISA's requirement that JSAs must be the actuarial equivalent of a single life annuity for the life of the participant." Pls.' Mot. for Class Cert. at 6 (internal quotations and citation omitted).

Although the defendants do not expressly make the argument with respect to commonality, the thread throughout their brief in opposition to class certification is that

the reasonableness of the actuarial assumptions that the defendants employed depends on the actual interest and mortality rates on the date of each individual's retirement.  But the manner in which both the plaintiffs and the defendants have presented proof in this case thus far demonstrates that the fundamental questions underlying the case are capable of classwide resolution, even if the defendants may also seek to present more specific evidence.  For example, the defendants themselves have argued, in their motion for summary judgment, that their expert will testify that the plans' assumptions resulted in reasonable SLA-to-JSA conversions for *all* class members.  Similarly, the plaintiffs argue that their expert will testify that the plans' assumptions did *not* result in reasonable SLA-to-JSA conversions for *all* class members.

The defendants argue along the same lines that what a prudent fiduciary may have done at a given time may be different from what a prudent fiduciary may have done at a later point in time.  The Court does not foreclose the possibility that evidence presented at trial may show that the Committee did not breach its fiduciary duty throughout the *entire* class period at issue, but rather that the violation commenced at some point during that period (such as when it became aware of certain information).  But the key for the commonality inquiry is that the Committee's conduct was in no way *individualized* with respect to certain plan participants.  The question whether the Committee breached its fiduciary duty—and if so, when that breach commenced—can thus be resolved "in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

The defendants also argue that the commonality requirement is not met because the proposed class includes members whose benefits were not calculated using an

eight percent interest rate and the 1971 Mortality Table. Specifically, the defendants point out that the class definition "extends to certain individuals whose JSA benefits were calculated using Tabular Factors" and "certain spouses who received a Subsidized Pre-Retirement Survivor Annuity, which is a monthly benefit paid if a participant died before retirement, and is equal to 50% of the SLA the participant otherwise would have been paid had he retired." Defs.' Resp. at 11.

The plaintiffs concede that twenty-six individuals who fall under the class definition "had their benefits calculated under the Plans' tabular factors instead of the 1971 Mortality Table with an 8% interest rate." Pls.' Reply at 5. They argue that these individuals should nevertheless remain in the class because "the tabular factors suffer from the same fundamental flaw in that they were similarly static and inaccurate and fail to produce actuarially equivalent benefits for these class members" and therefore "have the same essential characteristics as those of the rest of the class." *Id.* This vague assertion is insufficient to carry the plaintiffs' burden at the certification stage. The plaintiffs do not explain what these "tabular factors" are, how they were "inaccurate," or why these individuals share the same "essential characteristics" as the class despite the fact that their benefits were calculated in a different way. It is therefore impossible for the Court to determine whether these individuals are properly within the class. The Court therefore concludes that the class definition must be amended to exclude individuals whose benefits were calculated by the "tabular factors," i.e., by assumptions other than the 1971 Mortality Table and eight percent interest rate. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (explaining that an "over-inclusive" class definition "can and often should be solved by redefining the class

definition rather than by flatly denying class certification").

With respect to the proposed class members who received a "Subsidized Pre-Retirement Survivor Annuity," the plaintiffs argue that only three individuals fall into this camp.  Further, the plaintiffs disagree with the defendants' assertion that these three individuals' benefits were not calculated based on the 1971 Mortality Table.  The plaintiffs thus argue that "[t]his is simply a factual dispute about whether these three people fall within the class definition."  Pls.' Reply at 4.  The plaintiffs cite to their expert's report and supplemental report in support of their assertion that these individuals' benefits were calculated using the 1971 Mortality Table.  But their expert states only that "there were inconsistencies in the files provided by CITGO for these annuitants, and [he] was thus not comfortable excluding them entirely" from his analysis.  Pls.' Resp. to Mot. for Summ. J, Ex. 4 (Altman Supp. Rep.) at 8.  The expert further states that "[i]t is possible that upon examination of records not provided to me that these annuitants are receiving benefits that are unaffected by the Plans' unreasonable conversion factors.  If the Court concludes this is to be the case, it should remove these three annuitants from this lawsuit . . . ."  *Id*.  At the class certification stage, it is the plaintiffs' burden to show, by a preponderance of the evidence, that each Rule 23 requirement is satisfied.  *See Messner*, 669 F.3d at 811.  The plaintiffs' expert's decision to err on the side of caution by including these three individuals in his analysis is insufficient to show that it is more likely than not that their benefits were calculated using the plans' allegedly unreasonable conversion factors.  The Court concludes that the class definition must be amended to exclude them for the same reasons discussed with respect to the participants whose benefits were calculated using the tabular factors.

These resolvable issues aside, the Court concludes that the plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement. The Court agrees that, because the defendants calculated the plaintiffs' benefits using the same allegedly illegal method— namely, based on the 1971 Mortality Table and eight percent interest rate—there are questions of law and fact common to the class.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotations and citation omitted). Even if there are some "factual variations" between a named plaintiff's claims and those of other class members, the typicality requirement is met if the named plaintiff's claims "have the same essential characteristics as the claims of the class at large." *Id.* (internal quotations and citation omitted). "Although the typicality and adequacy requirements often 'merge[,] . . . typicality . . . should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members.'" *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190, 194–95 (N.D. Ill. 2018) (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

The Court concludes that the plaintiffs' claims are typical of the claims of the class. As discussed, the plaintiffs allege that all class members received lower payments than they were entitled to under ERISA because the defendants used an

identical method of calculating JSA payments that the plaintiffs allege was illegal throughout the entire class period.  In short, the plaintiffs allege that all class members suffered the same type of injury as a result of the same conduct of the defendant.  The class representatives' claims therefore have the "same essential characteristics" as the claims of the class at large.

The defendants argue that the typicality requirement is not met "because Plaintiffs retired between 2014 to 2017, but seek to represent participants who retired two decades before, under different circumstances," thus opening the door to "varied analyses on their statutory and fiduciary breach claims."  Defs.' Resp. at 7.  But the plaintiffs' claims are premised on the notion (supported by their expert's testimony) that the defendants' actions were "already highly inaccurate" in 1995 and that defendants improperly relied on a "static JSA conversion" instead of a model that "account[ed] for changes in mortality and interest rates over time."  Pls.' Reply at 4 & n.3.  Thus, if the plaintiffs succeed on their theory at trial, variations in mortality and interest rates over the years might affect the amount owed to each class member but would not affect the question whether defendants violated ERISA.  Moreover, as the Court has discussed with respect to the commonality inquiry, the manner in which the parties have litigated this case thus far is not consistent with the defendants' contention that a completely different analysis is required for each class member.  To the contrary, the defendants' expert has opined that the SLA-to-JSA conversion factor was within a reasonable range for all class members, while the plaintiffs' expert has opined that it was not.

Finally, the defendants also argue that the typicality requirement is not met because of the previously discussed issues regarding participants whose benefits were

calculated using tabular factors or who received subsidized pre-retirement survivor annuities. As the Court has discussed, however, given the relatively small number of participants that fall into these categories, the more appropriate course of action is to redefine the class to exclude these individuals before granting certification, not to deny certification. *See Messner*, 669 F.3d at 825.

### 4. Adequacy of representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "This inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Howard*, 989 F.3d at 609 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997)). "Factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously." *Wachala v. Astellas US LLC*, No. 20 C 3882, 2022 WL 408108, at *5 (N.D. Ill. Feb. 10, 2022).

The defendants argue that the plaintiffs are inadequate class representatives because of the existence of intraclass conflict. Specifically, the defendants argue that the plaintiffs have indicated that class members' benefits should be calculated "using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) *with an annual stability and September lookback period*." Defs.' Resp. at 12 (quoting Pls.' Mot. for Class Cert. at 3) (emphasis by defendants). The defendants argue that "some putative class members may prefer that Plaintiffs advocate for an August (instead of September) lookback period, because they believe it would be more beneficial to them," while

11

"[o]ther putative class members may instead prefer that Plaintiffs advocate for a December lookback." *Id.*

The defendants do not explain, however, how significant these effects might be on a class member's expected recovery or how many class members would be better off under different parameters. Under the circumstances, the Court need not consider this kind of "hypothetical contention that some class members will be hurt by class treatment." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). The plaintiffs have provided a logical reason for selecting an annual stability and September lookback period—namely, that the defendants' plans have used these parameters following the amendment of its actuarial equivalence definition in 2018. Any marginal effect of a different stability or lookback period on each class member's recovery does not outweigh their shared interest in establishing that the defendants underpaid them in violation of ERISA. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013) (explaining that, although "[c]ourts must take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative," a defendant cannot defeat class certification by invoking "the mere possibility" of "a trivial level of intra-class conflict").

The Court concludes that the named plaintiffs and the class members share "the same interest" and the "same injury," *Orr*, 953 F.3d at 499, and have demonstrated commitment to participating in this suit on behalf of their fellow class members. The Court further concludes, and the defendants do not dispute, that counsel for the proposed class have demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g). The plaintiffs have therefore satisfied the requirements of Rule 23(a)(4).

**B.    Rule 23(b) requirements**

The Cout next must determine whether the proposed class satisfies the requirements of at least one subsection of Rule 23(b).  The plaintiffs argue that certification is appropriate under either Rule 23(b)(1), 23(b)(2), or 23(b)(3).  "A court should endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list."  *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir.1999).

The Court concludes that certification is most appropriate under Rule 23(b)(1).  "Numerous ERISA actions in this district have been certified under 23(b)(1)."  *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (collecting cases).  A class may be certified under Rule 23(b)(1) if:

> prosecuting separate actions by or against individual class members would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

This case is a good fit under Rule 23(b)(1).  The class primarily seeks a declaration that the plans' method of calculating JSA benefits violates ERISA and reformation of that method.  In essence, the plaintiffs want the Court to order the defendants to change their plans and recalculate the benefits owed to participants under those terms.  The defendants "are entitled to consistent rulings regarding operation of the plan," *Neil*, 275 F.R.D. at 267, and "have a statutory obligation, as well

13

as a fiduciary responsibility, to 'treat the members of the class alike.'" *McAlister v. Metro. Life Ins. Co.*, No. 18 C 11229, 2023 WL 5769491, at *8 (S.D.N.Y. Sept. 7, 2023). Class treatment is thus appropriate to avoid the risk that individual adjudications will "establish incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1)(B). "[I]f two courts came to different conclusions as to how the proposed class members' [Plan] benefits must be calculated, Defendants would face a conflict between treating Plan participants alike and complying with each separate court order." *McAlister*, 2023 WL 5769491, at *8.

The defendants argue that "[c]ertification is not appropriate under Rules 23(b)(1) and (b)(2) because Plaintiffs seek money damages that are not merely incidental to their proposed injunctive relief." Defs.' Resp. at 13. The defendants argue that the "damages" are not "incidental" because (1) they require individual computation, and (2) the plaintiffs seek, in total, "monetary relief in the tens of millions of dollars . . . so the size of the recovery sought belies any contention that damages are 'incidental.'" *Id.* at 14.

As an initial matter, the authority the defendants cite to concerns classes certified under Rule 23(b)(2), not Rule 23(b)(1). Regardless, the Seventh Circuit has rejected this argument under similar circumstances. In *Johnson*, the court rejected the defendants' argument that class members who sought "reformation" of their retirement plan "as a basis for claiming additional benefits" were seeking money damages. 702 F.3d at 369. "Those benefits would not be damages," the Seventh Circuit explained, but rather "[t]hey would be the automatic consequence of a judicial order revising the [defendant's] plan to make it more favorable to participants." *Id.* Like the defendants in

this case, the defendants in *Johnson* argued that the Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), precluded a Rule 23(b)(2) class action where "monetary as well as declaratory or injunctive relief is sought." *Johnson*, 702 F.3d at 369. The Seventh Circuit, however, emphasized that *Dukes* did not preclude Rule 23(b)(2) certification where monetary relief is "incidental to the injunctive or declaratory relief." *Id.* (quoting *Dukes*, 564 U.S. at 360). The court then explained:

> [A]ll the class is seeking, at least initially, is a reformation of the [defendant's] pension plan—a declaration of rights that the plan confers and an injunction ordering [the defendant] to conform the text of the plan to the declaration. If once that is done the award of monetary relief will just be a matter of laying each class member's pension-related employment records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited to him from the benefit to which the reformed plan document entitles him, the monetary relief will truly be merely 'incidental' to the declaratory and (if necessary) injunctive relief (necessary only if [the defendant] ignores the declaration.

*Id.* at 371. In sum, if "calculation of monetary relief will be mechanical" and "formulaic" then certification under Rule 23(b)(2) is not precluded. *Id.* at 372. The Court concludes that is the case here, given that it is precisely the method of calculation of benefits that the plaintiffs challenge.

The defendants also argue that certification under Rule 23(b)(1) or (b)(2) is not appropriate because of "the varied analyses" required "to determine actuarial equivalence and fiduciary breach." Defs.' Resp. at 14. The Court has already explained, however, in its analysis of the Rule 23(a) commonality and typicality requirements, that it is not persuaded that such individualized inquiries will be necessary.

Because the Court concludes that certification is most appropriate under Rule

23(b)(1), it need not consider the parties' arguments regarding whether the requirements of Rule 23(b)(2) or 23(b)(3) are met.

## Conclusion

For the foregoing reasons, the Court provisionally grants the plaintiffs' motion for class certification [dkt. no. 97]. The Court directs the parties to confer and file a joint status report with a proposed amended class and subclass definition consistent with this order, or alternative proposed definitions if they cannot agree, by May 30, 2024. The status report should also include a discussion regarding whether, and when, notice should be sent to the class. The Court appoints the plaintiffs' counsel of record from Cohen Milsten Sellers & Toll PLLC, Stris & Maher LLP, and Feinberg, Jackson, Worthman & Wasow, LLP as class counsel under Rule 23(g).[1] The case is set for a telephonic status hearing on June 6, 2024 at 9:15 a.m., using call-in number 650-479-3207, access code 980-394-33.

MATTHEW F. KENNELLY
United States District Judge

Date: May 16, 2024

---

[1] Counsel of record are Todd F. Jackson, John R. Stokes, Michelle C. Yau, Nina Wasow, Peter K. Stris, Rachana A. Pathak, Ryan Wheeler, Victor A. O'Connell, Carol V. Gilden, and Daniel R. Sutter.