# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LESLIE URLAUB, MARK PELLEGRINI, and MARK FERRY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>CITGO PETROLEUM CORPORATION, THE BENEFIT PLANS COMMITTEE, THE CITGO PETROLEUM CORPORATION SALARIED EMPLOYEES' PENSION PLAN, AND THE CITGO PETROLEUM CORPORATION HOURLY EMPLOYEES' PENSION PLAN,<br><br>        Defendants. | Case No. 1:21-cv-04133 |

**<u>CLASS ACTION SETTLEMENT AGREEMENT</u>**

This Class Action Settlement Agreement ("Settlement Agreement"), dated October 2, 2024, is made and entered into by and among Plaintiffs Leslie Urlaub, Mark Pellegrini, and Mark Ferry ("Plaintiffs" or "Class Representatives"), on behalf of themselves, the Plans (for purposes of their claims under 29 U.S.C. § 1132(a)(2)), and each of the Class Members (as defined below), on the one hand, and Defendants CITGO Petroleum Corporation, the Benefit Plans Committee, and the Plans (as defined below), on the other hand (collectively, "Defendants") (Plaintiffs (including the Class Members) and Defendants are, collectively, "Parties," or any of them, a "Party"), subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**RECITALS**

1.    **The Action.** In the Action (as defined below), the Class Representatives

1

allege that the actuarial assumptions that the Plans used prior to January 1, 2018 to determine joint and survivor annuity ("JSA," as defined below) benefits did not produce actuarially equivalent benefits in violation of ERISA. The Class Representatives also allege that the Benefit Plans Committee breached its ERISA fiduciary duties in connection therewith.

2.      Defendants deny all liability to the Class Representatives, deny all of the claims made in the Action, deny all allegations of wrongdoing made in any of the complaints and filings in this Action, and deny that the Class Representatives, the Plans, or any of the Plans' current or former participants or their beneficiaries suffered any losses. Defendants further maintain that the Benefit Plans Committee acted prudently, solely in the interest of each Plan's participants and beneficiaries, and otherwise consistent with their fiduciary duties at all times when acting in any fiduciary capacity with respect to the Plans. Defendants assert that they complied at all times with all applicable law.

3.      **The Parties have entered into this Settlement Agreement for the purpose of resolving their disputes.** This Settlement Agreement is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims (as defined below) against Defendants and the other Released Parties (as defined below) and result in the complete dismissal of this Action with prejudice, subject to the terms and conditions herein and Court approval of the same.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be fair and reasonable, and intending to be legally bound, do hereby mutually agree that this Action shall be finally and fully compromised and settled, on the terms and conditions set forth herein, subject to Court approval:

## AGREEMENT

## I.    Definitions

For purposes of this Settlement Agreement, the following terms, when used in capitalized form, have the meanings indicated below.

A.    "Action" means the above-captioned class action pending in this Court, *Urlaub, et al. v. CITGO Petroleum Corp., et al.*, Case No. 1:21-cv-04133 (N.D. Ill.).

B.    "Additional Monthly Payments" means the amount calculated in accordance with Section III of this Settlement Agreement.

C.    "Amended Complaint" means the First Amended Complaint filed in this Action (ECF No. 64).

D.    "Associated Beneficiary" means the person a Participant Class Member has designated to receive the survivor benefit for a form of annuity under the Plans.

E.    "Attorneys' Fees and Expenses" means an amount awarded by the Court as compensation for the services provided by Class Counsel and the expenses incurred by Class Counsel in connection with the Action and the investigation leading to it and expenses for the Settlement Administrator.

F.    "Benefit Plans Committee" means the committee by that name identified in the Complaint.

G.    "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. § 1711-1715, as amended.

H.    "CITGO" means CITGO Petroleum Corporation and any of its successors-in-interest."

I.    "Claims" means and includes any actions, causes of action, claims, demands, liabilities, obligations, promises, rights, and suits whatsoever, whether arising under

federal, state, local, or foreign law, whether based on statute, ordinance, regulation, constitutional provision, common law, equity, contract, the terms of any of the Plans, or any other source (including but not limited to ERISA and the Internal Revenue Code), whether past, present, or future, known or unknown, suspected or unsuspected, asserted, or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated.

J. "Class" means:

> All of the Plans' participants and their beneficiaries with a Benefit Commencement Date on or after January 1, 1995 and prior to January 1, 2018, and who are receiving a Joint and Survivor Annuity (or, for beneficiaries whose spouse died before commencing benefits, a preretirement survivor annuity) that is less valuable than it would be if the participant's single life annuity were converted to a joint and survivor annuity or pre-retirement survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) with an annual stability and September lookback period. The Class does not include (1) "individuals whose benefits were calculated by the 'tabular factors,' i.e., by assumptions other than the 1971 Mortality Table and eight percent interest rate"; and (2) individuals "who received a 'Subsidized Pre-Retirement Survivor Annuity,'" as referenced in the Court's May 16, 2024 Memorandum and Order.

K. "Class Counsel" means Plaintiffs' counsel of record and their law firms: Cohen Milstein Sellers & Toll, Stris & Maher LLP, and Feinberg, Jackson, Worthman & Wasow, LLP.

L. "Class Member" means each individual in the Class, and consists of Participant Class Members and Beneficiary Class Members. The term "Participant Class Member" means a participant in pay status as of the Data Effective Date. The term "Beneficiary Class Member" means the Associated Beneficiary of a deceased Participant Class Member who is in pay status as of the Data Effective Date.

M. "Class Representative Service Award" means any service award that the Court may award to the Class Representatives for their participation in the Action and the risks they assumed in bringing the Action.

4

N.    "Clerk of Court" means the Clerk of the United States District Court for the Northern District of Illinois.

O.    "Court" means the United States District Court for the Northern District of Illinois.

P.    "Court of Appeals" means the United States Court of Appeals for the Seventh Circuit.

Q.    "Data Effective Date" means the first day of the month prior to the Effective Date.

R.    "Defendants' Counsel" means Jones Day.

S.    "Effective Date" means one business day following the later of (a) the date of the Final Approval Order, or (b) in the event of any objections to the Settlement Agreement, the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (c) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, and all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

T.    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

U.    "Final Approval Hearing" means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider, among other things, the fairness of the Settlement, any Class Member

objections, whether to grant final approval of the Settlement, and whether to approve any requested Attorneys' Fees and Expenses and Class Representative Service Awards.

V.     "Hourly Plan" means the Retirement Plan of CITGO Petroleum Corporation and Participating Subsidiary Companies.

W.     "Increased Benefits Appendix" means the schedule of increased benefits to be paid to Class Members, as described in Section III of this Settlement Agreement, and listed by unique identification number of the Class Member in pay status.

X.     "Independent Fiduciary" means the person or entity selected by CITGO, or by the Benefit Plans Committee, to serve as an independent fiduciary to the Plans with respect to the Settlement Agreement for the purpose of rendering the determination described in II.E.

Y.     "Individual Alleged Loss" for a Class Member means the difference in value, on a present value basis, of all past and anticipated future benefits payable to such Class Member (including the anticipated future benefits payable to the Associated Beneficiary), between such benefits (1) as calculated under the Plans' terms regarding actuarial equivalence that were in effect when the benefit first began to be paid, and (2) as would have been calculated using the Plans' now-current terms regarding actuarial equivalence. The Individual Alleged Loss amounts for all Class Members are set forth in the work papers produced with the Plaintiffs' expert Ian Altman's supplemental report dated October 4, 2023, and referred to as losses therein.

Z.     "Individual Present Value Adjustment" has the meaning ascribed in Section III.B.2.

AA.     "JSA" means a "joint and survivor annuity," *i.e.*, a monthly annuity for the life of the participant with a monthly survivor annuity (following the participant's death)

6

for the life of the participant's beneficiary (if the beneficiary survives the participant) which is not greater than 100 percent of the amount of the monthly annuity which is payable during the joint lives of the participant and the beneficiary.

BB.    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, that is approved by the Court for distribution to Class Members.

CC.    "Plan Amendment" means the amendment of each Plan referenced in III.D of the Settlement Agreement.

DD.    "Plans" means the Hourly Plan and Salaried Plan, and "Plan" means any of the Plans.

EE.    "Preliminary Approval Order" means the order that preliminarily approves the Settlement, the contents and method of distribution of the Notice, and the scheduling of a Final Approval Hearing.

FF.    "PSA" means a "preretirement survivor annuity," *i.e.*, an annuity (i) that is paid in respect of a participant who dies before he or she begins to receive benefits from a Plan; (ii) that is paid to the surviving spouse of that participant in a Plan for the life of the surviving spouse; and (iii) that is calculated as the survivor annuity component of a hypothetical JSA stated in the Plan that would have been payable to the participant if he or she had begun to receive benefits in that form of JSA from the Plan prior to his or her death (with the SLA to which such participant would have been entitled being converted to such JSA).

GG.    "Released Parties" means Defendants, CITGO Holding, Inc., and PDV Holding, Inc., together with their respective subsidiaries, partners, successors, and joint venturers, and their current and former agents, directors, officers, board members, employees, insurers and reinsurers, representatives, attorneys, assigns, administrators,

service providers, and Plan fiduciaries, and other representatives, and anyone acting on their joint or several behalf, past, present, and future.

HH.    "Released Claims" means any and all Claims that were asserted in the Action or could have been asserted in the Action relating to the provisions of the Plan applicable in the calculation or payment of the Class Members' benefit payments under the Plans; that are based on the same factual predicate as any of the claims asserted in Action; that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the increased benefits to the Class or the Additional Monthly Payments; or that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

II.    "Settlement" refers to the agreement embodied in this Settlement Agreement.

JJ.    "Settlement Administrator" shall mean a firm engaged by Plaintiffs to set up a website and provide information to Class Members concerning the settlement.

KK.    "Salaried Plan" means the CITGO Petroleum Corporation Salaried Employees' Pension Plan.

LL.    "SLA" means a "single life annuity," *i.e.*, a monthly annuity for the life of an individual, with no benefit payable following that individual's death.

MM.    "Supreme Court" means the United States Supreme Court.

NN.    "Weighted Allocation" has the meaning ascribed to it in Section III.B.1.

## II.    Settlement Approval Procedures

A.    **Motion for Preliminary Approval.** Promptly after the execution of this Settlement Agreement, Plaintiffs, by and through Class Counsel, with Defendants' consent, shall submit to the Court a copy of this Settlement Agreement along with a proposed Notice (the contents of which shall be jointly approved by the Parties), and

move the Court for entry of the Preliminary Approval Order (which shall be jointly approved by the Parties).

**B.    Notices**

1.    No later than ten (10) days after the filing of this Settlement Agreement with the Court, Defendants shall arrange for effective service of a notification of the Settlement that meets the requirements of CAFA on the appropriate federal and state officials. All costs associated with providing notification pursuant to CAFA shall be borne by Defendants.

2.    After the entry of the Preliminary Approval Order by the Court, Defendants will send the Notice of the Settlement to Class Members via first class mail to the address of each Class Member that is maintained by the recordkeeper for the Plans. Defendants will mail or cause to be mailed the Notices to Class Members within fourteen (14) days after entry of the Preliminary Approval Order, or such other date as the Court may set in the Preliminary Approval Order. In the event that a Notice is returned as undeliverable, Defendants will use commercially reasonable means to find a current address and re-send the Notice.  All costs associated with providing such Notice to the Class of the Settlement shall be borne by Defendants.

3.    Within seven (7)  days after the Preliminary Approval Order, Plaintiffs shall provide Defendants with contact information for the telephone support line and email address established by the Settlement Administrator, and the URL for the Settlement Website.  Within fourteen (14) days after the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website described in Section II.B.4., a telephone support line, and email address for receiving and responding to inquiries from any Class Members.

4.      The Settlement Website shall include the following documents or links to the following documents: the Amended Complaint, Settlement Agreement, the form of Notice approved by the Court, Preliminary Approval Order and any other Court orders related to the Settlement. When filed, the Settlement Administrator will also post or include links to the Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives Service Awards (and any documents submitted in support). No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing. The Settlement Administrator will take down the Settlement Website within 9 months after  the first of the month following the Plan Amendment referenced in Section III.D.

### C.      Objections

1.      Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, or to the requested Attorneys' Fees and Expenses and/or Class Representative Service Awards, must file with the Clerk of Court and serve on all counsel, no later than twenty-one (21) days before the Final Approval Hearing, a statement of the objection, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence that the Class Member wishes to introduce in support of the objection. Any Class Member who files and serves a written objection, as described herein, may appear at the Final Approval Hearing to object to any aspect of the fairness, reasonableness, or adequacy of the Settlement Agreement, or to the requested Attorneys' Fees and Expenses and/or Class Representative Service Awards.

2.      Class Members filing a written objection or appearing at the Final Approval Hearing in accordance with this Section may do so either on their own or

10

through an attorney hired at their own expense. If a Class Member hires an attorney to represent them (at their own cost and expense), the attorney must file a notice of appearance with the Clerk of Court no later than twenty-one (21) days prior to the Final Approval Hearing.

D. **Motion for Final Approval.** At least fourteen (14) days prior to the Final Approval Hearing, or at such other time as the Court may specify, Plaintiffs will file a motion for final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(2), and entry of a Final Approval Order in a form jointly agreed upon by the Parties.

E. **Review by Independent Fiduciary.** Prior to the Motion for Final Approval referenced above, the Settlement shall be reviewed by an Independent Fiduciary, on behalf of the Plans, to determine whether to approve the Settlement and authorize the release of the Released Claims on behalf of the Plans.

1. The Independent Fiduciary shall be retained by CITGO or by the Benefit Plans Committee, on behalf of the Plans, subject to Plaintiffs' approval, at CITGO's expense.

2. The Independent Fiduciary shall comply with all relevant requirements of Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39").

3. The Independent Fiduciary shall notify the Parties, through their counsel, of its determination regarding the Settlement and release of claims in writing no later than twenty-eight (28) calendar days before the Final Approval Hearing.

4. The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

11

F.      **Termination Rights.** Each of Defendants and Plaintiffs shall have the right to terminate the Settlement Agreement by providing written notice to the other of their election to do so within thirty (30) days of the date on which any of the following occurs: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to approve the Settlement Agreement or any material term hereof; (c) the Court declines to enter the Final Approval Order in any material respect; (d) the Final Approval Order or any related judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) (1) either the Independent Fiduciary does not issue a written opinion that all relevant requirements of PTE 2003-39 are met, or disapproves of the Released Claims against Defendants and the other Released Parties or Settlement Agreement, or CITGO or the Benefit Plans Committee reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by PTE 2003-39, and (2) the parties acting reasonably do not mutually agree to modify the terms of the Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39. Notwithstanding the foregoing, any decision by the Court or any appellate tribunal with respect to an application for Attorneys' Fees and Expenses and/or Class Representative Service Awards shall not be considered material to this Settlement Agreement and shall not be grounds for termination.

### III.    Increased Benefits to the Class

A.      **Value of Increased Benefits.** CITGO shall increase the JSA and PSA benefits of Class Members by a combined aggregate present value of $10 million, with such present value calculated as set forth in Section III.B., by amending the Plans in accordance with this Section III.

**B.** **Preliminary Calculation of Increased Benefits**. The increased benefits to the Class Members will be preliminarily calculated (subject to final updates as set forth in Section III.C.) as follows:

1.  The aggregate present value benefit increase of $10 million will be allocated among Class Members *pro rata* relative to their Weighted Allocation. To account for risks of litigation, the Weighted Allocation is calculated as follows:

    (a) Subgroup A: For Participant Class Members who commenced benefits on or after August 3, 2015 and Beneficiary Class Members, if the related Plan participant commenced benefits on or after August 3, 2015, the Weighted Allocation is 87.3364739%.

    (b) Subgroup B: For all other Class Members, the Weighted Allocation is 20%.

2.  The Individual Present Value Adjustment of each Class Member is the product of that Class Member's Weighted Allocation multiplied by that Class Member's Individual Alleged Loss. The sum of all such Individual Present Value Adjustments will not exceed (or be less than) $10 million. If the sum of all Individual Present Value Adjustments exceeds (or falls below) $10 million, each Individual Present Value Adjustment will be *pro rata*, such that the sum of all adjusted Individual Present Value Adjustments equals $10 million.

3.  Each Individual Present Value Adjustment will then be converted into an annuity, in the same form of annuity as being received by the Class Member, using the Internal Revenue Code § 417(e) assumptions that are applicable under the Plan for Plan benefit commencements on October 1, 2024 to arrive at each such Class

13

Member's "Additional Monthly Payment." The actuarial present value of all Additional Monthly Payments (including the value of any benefits that may be paid to Associated Beneficiaries due to such Additional Monthly Payments) shall equal the sum of all Individual Present Value Adjustments, and thus shall also not exceed (or fall below) $10 million. Each Additional Monthly Payment will be listed on a preliminary Increased Benefits Appendix.

4. To prepare the preliminary Increased Benefits Appendix, Defendants will conduct a search of the social security death master file to determine which of the Class Members, if any, are deceased. Within 21 days after the Preliminary Approval Order, Defendants will provide the results to Class Counsel.

5. Within 21 days of receiving the results, Class Counsel will, with the assistance of Plaintiffs' expert, prepare a preliminary Increased Benefits Appendix that identifies the Additional Monthly Payment for each Class Member, calculated as set forth in this Section III, and provide the preliminary Increased Benefits Appendix to Defendants.

6. Within 21 days of receiving the preliminary Increased Benefits Appendix, CITGO will review the Increased Benefits Appendix and communicate whether it agrees that the actuarial present value of the aggregate of each Class Member's Additional Monthly Payment (including the value of any benefits that may be paid to Associated

Beneficiaries due to such Additional Monthly Payments) does not exceed (or fall below) $10 million as such is required to be calculated pursuant to the terms set forth in this Settlement Agreement. If the actuarial present value of the aggregate of each Class Member's Additional Monthly Payment (including the value of any benefits that may be paid to Associated Beneficiaries due to such Additional Monthly Payments) exceeds or falls below $10 million, each shall be adjusted *pro rata* such that the aggregate does not exceed or fall below $10 million. CITGO and Plaintiffs will work in good faith to resolve any disagreements.

7.  Associated Beneficiaries will receive benefits according to the selected form of JSA, based on the Participant Class Member's benefit amount as such benefit is adjusted pursuant to this Settlement Agreement, and otherwise consistent with the terms of the Plan.

8.  Notwithstanding any other provision in this Settlement Agreement, the amount payable to any Class Member is subject to the terms of any current or future Qualified Domestic Relations Order with respect to the division of benefits between that Class Member and the alternate payee.

9.  Class Counsel may file the preliminary Increased Benefits Appendix in connection with their Final Approval Motion so long as no personally identifiable information is in the filed copy of the preliminary Increased Benefits Appendix.

C.   **Final Adjustments for Class Members No Longer in Pay Status.**

1.   Within 30 days of the Effective Date, Defendants will provide a spreadsheet with Class Member data that accurately identifies, based on the Plans' data on the Data Effective Date, all Class Members listed on the preliminary Increased Benefits Appendix that are deceased ("newly-deceased Class Members").

2.   Any Individual Present Value Adjustment that was allocated to an individual who is identified as deceased in Section III.C.1. shall be reallocated among the remaining Class Members (provided, for the avoidance of doubt, that an Associated Beneficiary of a newly-deceased Participant Class Member shall receive the survivor portion of such Participant Class Member's JSA, as adjusted in Section III.B., plus any increase pursuant to this Section III.C.2.). Plaintiffs will calculate such reallocations consistent with the method set forth in Section III.B. and, within 21 days of receipt of the spreadsheet from Defendants, provide Defendants with an updated Increased Benefits Appendix that includes any such adjustments.   Any such changes shall not result in the actuarial present value of the aggregate of all Class Member's Additional Monthly Payment (including the value of any benefits that may be paid to Associated Beneficiaries due to such Additional Monthly Payments) exceeding (or falling below) $10 million.

3.   CITGO shall review the Increased Benefits Appendix and communicate whether it agrees that the actuarial present value of

16

the aggregate of each Class Member's revised Additional Monthly Payment (including the value of any benefits that may be paid to Associated Beneficiaries due to such Additional Monthly Payments) does not exceed (or fall below) $10 million (as such is required to be calculated pursuant to the terms set forth in this Settlement Agreement) within 21 days of receipt. If the actuarial present value of the aggregate of each Class Member's revised Additional Monthly Payment (including the value of any benefits that may be paid to Associated Beneficiaries due to such Additional Monthly Payments) exceeds or falls below $10 million, each shall be adjusted *pro rata* such that the aggregate does not exceed $10 million. CITGO and Plaintiffs will work in good faith to resolve any disagreements. Upon resolution, such document will be the final Increased Benefits Appendix.

D.  **Plan Amendment**. Within 60 days of CITGO's agreement regarding the final Increased Benefits Appendix as set forth in Section III.C above, CITGO, as the sponsor of the Plans, shall amend each of the Plans consistent with the final Increased Benefits Appendix to provide that, for payments on and after the first of the month following the date the Plan is amended, the Plan will pay increased monthly benefit amounts in the forms of benefit in effect as of one day prior to such date. After the Plans are amended, all benefit rights will be solely determined in accordance with the Plans and the Plan Amendments, and no Plaintiff or Class Member shall have any rights to increased benefit amounts or Additional Monthly Payments other than as set forth therein.

17

**E.** **Implementation**. Following the Plan Amendments referenced above, the Plans shall implement and effectuate all increases in future monthly benefits consistent with the Plan Amendment. Any status changes (e.g., deaths, divorces, etc.) will be handled by each Plan in the normal course going forward, however, benefit increases will not be retroactively applied (e.g., a death before the Plan is amended will not result in a payment to the decedent's estate or an adjustment to a survivor's benefit other than what is provided by the Plan Amendment that implements the final Increased Benefits Appendix).

### IV. Attorneys' Fees and Expenses, and Class Representative Service Awards

**A.** Within 30 days of the entry of the Preliminary Approval Order, CITGO shall transfer into an escrow account $4,750,000 to fund the maximum amount of Attorneys' Fees and Expenses, and Class Representative Service Awards, that could be awarded by the Court. Plaintiffs and their counsel shall be entitled to recover from this escrow account all Court-approved amounts for their Attorneys' Fees and Expenses and Class Representative Service Awards (not to exceed $4,750,000 in total) which consideration is in addition to the increased benefit payments described in Section III above. Any amount that is not awarded by the Court will be returned to CITGO.

**B.** At least fourteen (14) days prior to the deadline for the Independent Fiduciary's determination, Class Counsel shall file a motion for an award of Attorneys' Fees and Expenses, and Class Representative Service Awards, in a total amount not to exceed the specified sum ($4,750,000).

**C.** The Settlement Agreement is not contingent upon the Court approving the requested Attorneys' Fees and Expenses, and Class Representative Service Awards.

**D.** All Attorneys' Fees and Expenses that are approved by the Court shall be

paid from the escrow account upon their approval so long as the Final Approval Order has been entered, notwithstanding any objections or appeals of the Settlement or the requested fee award. If the Settlement Agreement is terminated pursuant to the terms of this Settlement Agreement or, if as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees and Expenses is reduced or reversed, Class Counsel shall make the appropriate refund or repayment, along with interest calculated at an annual rate of 4.0% compounded daily from the date of the Final Approval Order, in full no later than twenty (20) days after (a) receiving notice of a termination of the Settlement Agreement, or (b) any order reducing or reversing the award of Attorneys' Fees and Expenses becoming final.

## V.    Release of Claims and Covenant Not to Sue

A.    **Class Release.** Upon entry of the Final Approval Order by the Court, the Plans, Plaintiffs and each Class Member and their respective heirs, beneficiaries (including Associated Beneficiaries), Alternate Payees, fiduciaries, trustees, executors, administrators, estates, past and present partners, agents, attorneys, predecessors, successors, participants, and assigns will be deemed to forever release and discharge the Released Parties from any and all of the Released Claims, .

B.    **Covenant Not to Sue.** As of the entry of the Final Approval Order, the Plans (and any fiduciary or other person acting on behalf of the Plans), Plaintiffs, and each Class Member acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, or assert in any action, proceeding, or forum, any cause of action, demand, or claim (including administrative claims made to the Plan) on the basis of, connected with, or arising out of any Released Claims against any of the Released Parties.

C. **Dismissal with Prejudice**. The Final Approval Order shall provide for dismissal of the Action with prejudice.

D. **Acknowledgement of Release of Unknown Claims.** The Plans, Plaintiffs and the Class Members expressly acknowledge certain principles of law applicable in some states provide that a release does not extend to claims that the creditor or releasing party does not know or suspect to exist in their favor at the time of executing the release and that, if known by them, would have materially affected their settlement with the debtor or released party. Plaintiffs, on behalf of themselves and the Plans and the Class Members, agree to release these protections to the extent permitted by law.

As of the entry of the Final Approval Order, the Plans, Plaintiffs, the Class Members, and the Plans shall be conclusively deemed to, and by operation of the Effective Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims including specifically to Section 1542 of the California Civil Code, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

Also, the Class Representatives and Class Members with respect to the Released Claims shall, upon the Effective Approval Order, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any

foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

E. **Action to Enforce Agreement.** Nothing herein will preclude an action to enforce the terms of this Settlement Agreement.

F. **Non-Liability**. Neither Plaintiffs, Defendants, nor their counsel shall be liable for any Claims that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the increased benefits to the Class or the Additional Monthly Payments in accordance with the terms of the Settlement Agreement; or that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

## VI. Miscellaneous

A. **Purpose of Settlement.** This Settlement Agreement is being entered into by the Parties solely to settle and compromise any and all disputes among the Parties as described more fully herein. This Settlement Agreement will not be construed or characterized, publicly or privately, by anyone as an admission of liability of any kind by Defendants.

B. **No Admission of Wrongdoing.** Whether or not the Settlement, as embodied in this Settlement Agreement, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms of this Settlement Agreement, including the exhibits hereto, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection therewith:

- shall not be offered or received against Defendants or any other Released Parties as evidence of, or be deemed to be evidence of, any presumption, concession, or admission by any of the Defendants or the Released Parties with respect to the truth of any fact alleged by Plaintiffs or the validity, or

21

lack thereof, of any Claim that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing on the part of Defendants or the Released Parties;

- shall not be offered or received against Defendants or any other Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the foregoing parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if the Settlement is approved by the Court, Defendants and the Released Parties may refer to this Settlement Agreement to effectuate the protection from liability granted to them hereunder;

- shall not be construed against Defendants or any other Released Parties as an admission or concession that the consideration provided hereunder represents what could be or would have been recovered after trial; and

- shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or the other Class Members that any of their claims are without merit or that relief recoverable in the litigation of the Action would not have exceeded the consideration provided by this Settlement Agreement.

C. **Cooperation Among the Parties.** The Parties will cooperate fully with each other and will use their best efforts to obtain, and will not engage in any conduct to prevent, the Court's Preliminary and Final Approval of this Settlement Agreement and

22

all of its terms. The Parties will use their best efforts to implement the Settlement Agreement thereafter.

D. **Inquiries from Class Members Regarding Benefits.** Any Party may respond to questions from any Class Member concerning that Class Member's increased benefits under this Settlement Agreement. The responses provided to such questions will not create or establish any liability on the part of the Plans, Defendants, or any Released Parties, or grant any additional rights to any Class Member or Associated Beneficiary, that is not expressly specified in this Settlement Agreement.

E. **Modifications.** The Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their successors- in-interest.

F. **Binding Effect of the Agreement.** The terms and provisions of this Settlement Agreement shall be binding upon and inure to the benefit of Plaintiffs, Defendants, and the Class Members and each of their respective predecessors, successors, beneficiaries, joint annuitants, estates, legal representatives, heirs, assigns, and any other individual or entity who could make a claim through them.

G. **Multiple Originals/Counterparts.** The Settlement Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, DocuSign, or by a .pdf image of the signature transmitted by email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

H. **Authority of Persons Signing the Agreement.** The individuals executing this Settlement Agreement for the Parties represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Settlement Agreement.

23

I.     **Representations of Class Representatives**.  The Class Representatives hereby represent and acknowledge that they have consulted with and obtained the advice of counsel regarding this Settlement Agreement and that this Settlement Agreement has been explained to them by their counsel.

J.     **Entire Agreement.** This Settlement Agreement is the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings.  To the extent there is any conflict between the final term sheet signed by the Parties as of September 11, 2024, and the Settlement Agreement, the Settlement Agreement governs. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of this Settlement Agreement has been made or relied upon except to the extent expressly set forth in this Settlement Agreement.

K.     **Arm's-Length Transaction.** The Parties have negotiated all terms and conditions of this Settlement Agreement at arm's length.

L.     **Costs and Expenses.** Apart from any expenses of Class Counsel that may be awarded in connection with Section IV above, the Parties agree to bear their own costs and expenses incurred in connection with the Action and this Settlement Agreement.

M.     **Section Titles.** The headings in this Settlement Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of the Settlement Agreement or the intent of the provisions.

N.     **No Presumption Against Drafter.** None of the Parties shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

O.     **Waivers.** The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous to this Settlement Agreement.

P.     **Extensions of Time.** The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement.

Q.     **Severability.** In the event that any one or more of the provisions contained in this Settlement Agreement shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way affect any other provision if the Parties mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.

R.     **Tax Consequences.** No opinion concerning the tax consequences of the Settlement to individual Class Members is being given or will be given by Defendants, Defendants' Counsel, Plaintiffs, or Class Counsel, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

S.     **This Agreement Governs.** To the extent there is any inconsistency between this Settlement Agreement and any notice or other communication, this Settlement Agreement shall govern and operate to define the rights and obligations of the Parties.

T.     **Choice of Law.** The Parties understand and agree that this Settlement Agreement, and any disputes arising out of this Settlement Agreement, shall be governed

by and construed in accordance with the laws of the State of Texas, without reference to choice of law presumptions.

U.    **Court's Continuing Jurisdiction.** Without altering the finality of any of the Court's orders and judgments, the Court shall retain exclusive jurisdiction over Plaintiffs, Defendants, Class Members, and the Action with respect to matters arising out of or connected with the Settlement, and may issue such orders as necessary to enforce or implement the terms of the Settlement Agreement.

V.    **Notification to Parties.** Except to the extent explicitly set forth in the Settlement Agreement, if any Party is required to give notification to any other Party under this Settlement Agreement, such notification shall be in writing and shall be deemed to have been duly given upon (a) receipt of hand delivery; (b) mailing by means of pre-paid, overnight courier delivery service, or (c) sending of electronic mail, provided that no rejection notice occurs and that identical notification is sent by pre-paid overnight courier delivery service. Notice shall be provided as follows:

If to Plaintiffs or Class Counsel:                COHEN MILSTEIN SELLERS &
                                                  TOLL PLLC
                                                  1100 New York Ave. NW
                                                  Suite 500
                                                  Washington D.C. 20005
                                                  Attn:    Michelle C. Yau
                                                           Kai H. Richter
                                                           Ryan A. Wheeler
                                                           myau@cohenmilstein.com
                                                           krichter@cohenmilstein.com
                                                           rwheeler@cohenmilstein.com

If to Defendants or Defendants' Counsel:          JONES DAY
                                                  110 North Wacker
                                                  Suite 4800
                                                  Chicago, IL 50606
                                                  Attn:    Michael J. Gray
                                                           Bethany K. Biesenthal
                                                           mjgray@jonesday.com

bbiesenthal@jonesday.com

AGREED TO ON BEHALF OF PLAINTIFFS Leslie Urlaub, Mark Pellegrini, and Mark Ferry, individually and on behalf of the Class

Dated: October 2, 2024

Michelle C. Yau
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
myau@cohenmilstein.com

27

AGREED TO ON BEHALF OF DEFENDANTS CITGO Petroleum Corporation, the Benefit Plans Committee, the CITGO Petroleum Corporation Salaried Employees' Pension Plan, and the Retirement Plan of CITGO Petroleum Corporation and Participating Subsidiary Companies

Dated: <u>October 2, 2024</u>

Amanda Gutierrez
9E3B93A8341F4E8...

Senior Corporate Counsel
CITGO Petroleum Corporation